UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBIN KEESLER,

        Plaintiff,                                  Hon. Gordon J. Quist

v.                                                     Case No. 1:13-CV-744

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security

case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 50 years of age on her alleged disability onset date. (Tr. 159-62). She successfully completed high school and worked previously as a state social worker. (Tr. 47-48, 232). Plaintiff applied for benefits on June 28, 2010, alleging that she had been disabled since October 15, 2009, due to degenerative disc disease, depression, and anxiety. (Tr. 159-62, 182). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 122-58). On April 14, 2011, Plaintiff appeared before ALJ Mario Silva with testimony being offered by Plaintiff and a vocational expert. (Tr. 53-78). In a written decision dated July 18, 2011, the ALJ determined that Plaintiff was not disabled. (Tr. 40-48). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

**RELEVANT MEDICAL HISTORY**

On June 24, 2007, Plaintiff participated in a consultive examination conducted by Anne Kantor, LLP. (Tr. 231-37). Plaintiff reported that she was experiencing depression and anxiety regarding her back impairments. (Tr. 231). Specifically, Plaintiff reported that she underwent surgery in 2000 to repair a herniated disc and underwent spinal fusion surgery in October 2006. (Tr. 231). Plaintiff reported that, "I limp most of the time because of the pain," but Kantor observed that Plaintiff walked with "no apparent limp." (Tr. 233). Plaintiff also reported that, "I have trouble remembering because of this medication fog," but Kantor observed that Plaintiff "provided all the information for this report from memory." (Tr. 233). The results of a mental status

examination were unremarkable. (Tr. 234-36). Plaintiff was diagnosed with adjustment disorder with mixed anxiety and depressed mood. (Tr. 236). Her GAF score was rated as 53.[1] (Tr. 236).

On March 11, 2010, Plaintiff participated in an electromyography and nerve conduction examination the results of which revealed the following:

> EMG and nerve conduction studies appear on the face sheet and reveal a peroneal motor conduction of 51.2 m/sec with normal being greater than 37 m/sec. Distal latency was 4.1 msec with normal being less than 6.0, also well within normal limits. The F wave latency for the peroneal motor nerve was 47.25 msec which is within normal limits. Distal latency measured 3.6 msec with normal being less than 4.0 and the amplitude of the sensory nerve action potential was 6 microvolts which is slightly reduced probably secondary to the peripheral artery disease. On EMG, however, there was evidence of axonal degenerative changes in the left medial gastrocnemius[2] which also had decreased reflex compared to the knee on the left side; 1-2+ positive waves and fibrillations were seen in that muscle only. The remainder of the muscles were within normal limits.

(Tr. 241-42). The doctor recommended that Plaintiff receive "conservative treatment" in the form of new medications. (Tr. 242).

Treatment notes dated March 16, 2010, indicate that Plaintiff exhibited "normal gait and station and normal posture." (Tr. 253). Plaintiff also reported that her pain medication was "helpful and she feels better now than she has in months to years." (Tr. 253).

On April 27, 2010, Plaintiff was examined by Dr. John Jacobs. (Tr. 250-52). A musculoskeletal examination revealed the following:

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 53 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

[2] The gastrocnemius muscle is "the largest and most superficial muscle of the calf." *See* Gastrocnemius, available at http://www.merriam-webster.com/dictionary/gastrocnemius (last visited on May 9, 2014).

> Global Assessment
> Gait and Station - normal gait and station.
> Head and Neck - symmetric, no deformities, masses or tenderness, no known fractures, normal strength and tone, no laxity and normal movements without pain.  Spine, Ribs and Pelvis - no deformities, malalignments, masses or tenderness, no known fractures, normal movements without pain and normal strength and tone. Right Upper Extremity - no instability, subluxation or laxity.  Left Upper Extremity - no instability, subluxation or laxity.  Right Lower Extremity - no deformities, masses or tenderness, no known fractures, normal strength and tone and no instability, subluxation or laxity. Left Lower Extremity - normal strength and tone.
> Spine/Ribs/Pelvis
> Cervical Spine: Examination of the cervical spine reveals - normal coordination and reflexes.
> Upper Extremity
> Elbow: Examination of the right elbow reveals - no tenderness to palpation, no pain and normal range of motion, normal reflexes, no crepitus.  Examination of the left elbow reveals - no tenderness to palpation, no pain and normal range of motion, normal reflexes, no crepitus.
> Lower Extremity
> Hip: Examination of the right hip reveals - normal range of motion, no crepitus.  Examination of the left hip reveals - normal range of motion, no crepitus.
> Femur: Examination of the left femur reveals - no known fractures, subluxations or deformities.

(Tr. 252).

On May 19, 2010, Plaintiff participated in an MRI examination of her lumbar spine the results of which revealed:

> The lumbosacral spine was imaged from the lower sacrum to the level of T11-12.  The conus is normal.  The bone marrow is intact, and the alignment of the spine is anatomic.  The examination is within normal limits down through L4-5.
>
> At L5-S1, there are postoperative changes present consistent with prior discectomy and placement of an interbody spacer.  This level is unchanged from the prior examination.  There is some enhancing epidural fibrosis seen in the ventral canal at the level of the

5

>discectomy, but there is no change. There is no mass effect upon the adjacent S1 nerve root or dural sac. No new abnormality is seen.

(Tr. 258).

On June 17, 2010, Plaintiff was examined by Dr. Robert Yount. (Tr. 260). Plaintiff reported that she was experiencing "pain across her back" as well as "sciatic pain in the left." (Tr. 260). Plaintiff exhibited no evidence of weakness and was able to "walk on both heels satisfactorily." (Tr. 260). The doctor observed that Plaintiff's MRI "shows no real changes than before" with "good fusion at L5-S1" and no evidence of nerve root impingement. (Tr. 260). The doctor also noted that Plaintiff "has not developed any degenerative changes of [the] adjacent disc namely L4-5." (Tr. 260). Dr. Yount concluded that "[a]natomically [Plaintiff's] back looks fine" and that "her pain management at present is appropriate." (Tr. 260). Plaintiff was encouraged to "resume her exercise program which she has slacked off a little bit on." (Tr. 260).

On July 12, 2010, Plaintiff reported that her pain medication "does a good job." (Tr. 266). Plaintiff also reported that she engages in the following "fitness activities": (1) horseback riding, (2) swimming, (3) gardening, (4) running, and (5) walking. (Tr. 267). Treatment notes dated August 31, 2010, indicate that Plaintiff "has continued to have success with" her pain medications. (Tr. 291). On January 4, 2011, Plaintiff reported that her pain medication "helps." (Tr. 295).

On June 15, 2011, Plaintiff participated in a consultive examination conducted by Paul Kitchen, Ph.D. (Tr. 304-08). Plaintiff reported that she was unable to work due to back pain which was also causing her to experience depression and anxiety. (Tr. 304). Plaintiff reported, however, that her pain medication was "helpful." (Tr. 304). The results of a mental status examination were unremarkable. (Tr. 306-08). The doctor concluded that Plaintiff was not suffering

from any emotional impairment and "that her physical health symptoms are her only area of concern at this time." (Tr. 308). The doctor further concluded that Plaintiff's "ability to understand, remember, and carry out instructions" was not impacted or impaired. (Tr. 309). The doctor further reported that Plaintiff's "ability to interact appropriately with supervisors, co-workers, and the public, as well as respond to changes in a routine work setting" were likewise not affected or impacted. (Tr. 310).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) history of spinal disorder, lumbar fusion, and residual epidural fibrosis; (2) history of abdominal hernia repair; and (3) nicotine abuse, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 42-44).

The ALJ next determined that Plaintiff retained the capacity to perform work subject to the following limitations: (1) she can sit, stand, and walk for six hours each during a normal workday; (2) she can occasionally lift/carry 40 pounds and can frequently lift/carry 20 pounds; (3) she can occasionally bend and climb ramps/stairs; (4) she can perform all other postural activities on an occasional basis, except she cannot climb ladders, ropes, or scaffolds; and (5) she cannot work in proximity to unprotected heights. (Tr. 44-45). Based on the testimony of a vocational expert, the ALJ determined that Plaintiff retained the ability to perform her past relevant work as a social worker

as such "does not require the performance of work -related activities precluded by [Plaintiff's] residual functional capacity."[4] (Tr. 46-47, 71-75).  Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

I.       **The ALJ's RFC Determination is Supported by Substantial Evidence**

Plaintiff argues that she is entitled to relief because the ALJ "did not articulate any evidentiary support for the residual functional capacity determination as required by Social Security Ruling 96-8p."  Social Security Ruling 96-8p provides that in determining a claimant's RFC, the ALJ must "assess [the claimant's] work-related abilities on a function-by-function basis." *See* Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184 at *1 (S.S.R., July 2, 1996).

As the Sixth Circuit has recognized, however, while a "function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing." *Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 547 (6th Cir., Mar. 4, 2002) (citation omitted). Rather, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record."  *Id.* (citation omitted), *see also*, *Rudd v. Commissioner of Social Security*, 2013 WL 4767020 at *9 (6th Cir., Sept. 5, 2013) (SSR 96-8p merely requires the ALJ to "address a claimant's exertional and nonexertional capacities and also describe how the evidence supports her conclusions").

---

[4] The vocational expert testified that if Plaintiff were even further limited in that she could lift only ten pounds occasionally, stand/walk for two hours daily, and sit for six hours daily, Plaintiff would still be able to perform her past relevant work. (Tr. 73-75).

The ALJ discussed at length the evidence of record and how such supported his RFC determination. (Tr. 42-47). Specifically, the ALJ found that the objective medical evidence did not support Plaintiff's allegations of extreme pain and limitation, but instead was consistent with his RFC determination. The ALJ noted that Plaintiff has recently been prescribed only conservative treatment which, as discussed above, has been effective. The ALJ further noted that Plaintiff's reported activities were consistent his RFC determination. The ALJ's rationale is supported by substantial evidence and is consistent with the authority identified above. Accordingly, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  June 10, 2014                                         /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge